IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSE M. GONZALEZ, ADAMARI RIVAS, | § § § | SA-20-CV-00926-XR |
| *Plaintiffs,* | § § § | |
| vs. | § § | |
| NORTHSIDE INDEPENDENT SCHOOL DISTRICT, IN THEIR OFFICIAL CAPACITY;  N.I.S.D. BOARD OF TRUSTEES, IN THEIR OFFICIAL CAPACITY; JAY SUMPTER, HIS OFFICIAL CAPACITY; VERONICA VALENCIANO, HER OFFICIAL CAPACITY; DR. BRIAN T. WOODS, HIS OFFICIAL CAPACITY; RAY GALINDO, HIS OFFICIAL CAPACITY; AND WESLEY SCOTT, HIS OFFICIAL CAPACITY; | § § § § § § § § § § § § § § § | |
| *Defendants.* | § § | |

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Xavier Rodriguez:**

This Report and Recommendation and Order concerns the Court's review of the pleadings pursuant to 28 U.S.C. § 1915(e) and Plaintiffs' Motion for the Appointment of Counsel [#6].  All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C.  The undersigned has authority to enter this recommendation under Section 19115(e) pursuant to 28 U.S.C. § 636(b)(1)(B).  The undersigned has authority to enter this order on Plaintiffs' motion for the appointment of counsel pursuant to 28 U.S.C. § 636(b)(1)(A).  For the reasons set forth below, it is recommended that this case be dismissed because Plaintiffs fails to state a claim upon

1

which relief may be granted.   The Court will also order that Plaintiffs' motion for the appointment of counsel be denied.

## I.  Review of the Pleadings

Pursuant to 28 U.S.C. § 1915(e), the Court is empowered to screen any civil complaint filed by a party proceeding *in forma pauperis* ("IFP") to determine whether the claims presented are (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief.[1]  *See* 28 U.S.C. § 1915(e)(2)(B).  On August 12, 2020, the Court granted Gonzalez's motion to proceed IFP based on his inability to afford court fees and costs.  However, the Court identified certain deficiencies in the pleadings and ordered Plaintiffs to file a more definite statement to clarify the factual allegations underlying their suit prior to ordering service of the Complaint on any Defendant. Plaintiffs timely filed an Amended Complaint on August 31, 2020 [#5].  For the reasons that follow, the Court will recommend this case be dismissed for failure to state a claim upon which relief can be granted.

## A.      Factual Allegations in the Original and Amended Complaints

Gonzalez and his daughter, Plaintiff Adamari Rivas, filed this action against Northside Independent School District ("NISD"), its Board of Trustees, Jay Sumpter (Principal of John Jay High School), and various other employees of NISD (Open Records Specialist and Public Liaison Veronica Valenciano, Assistant Superintendent of Budget and Finance Dr. Brian T. Woods, Deputy Superintendent for Administration Ray Galindo, and Assistant Superintendent

---

[1] Under 28 U.S.C. § 1915(e), a court may at any time dismiss a case if it determines that the case filed by the IFP plaintiff is frivolous, but is not required to screen non-prisoner cases for frivolousness at the outset. In contrast, when an IFP case is filed by a prisoner, the court is required to screen a complaint for frivolousness prior to docketing or as soon as possible. *See* 28 U.S.C. § 1915A(a).

Wesley Scott).  (Compl. [#4] at ¶ 2.)  Plaintiffs, who identify as Mexican and as indigenous peoples of the First Nation People Lipan Coahuiltecan, allege that Defendants violated the Civil Rights Act of 1964 by discriminating against them based on their race and national origin during the previous school year when Rivas was a senior in high school.  (*Id.* at ¶¶ 3–4.)

According to Plaintiffs' Original Complaint, Rivas was a member of the Varsity Mariachi band at John Jay High School (an NISD school) during her senior year, but she was not issued her own uniform.  (*Id.* at ¶ 4.)  Instead, she was forced to share a uniform with another member of the band, putting her at greater risk of exposure to COVID-19 and preventing her from participating in all competitions throughout the season.  (*Id.*)  Plaintiffs contend that they were told the group had been allocated zero dollars from NISD's budget for extracurricular activities for the school year.  (*Id.*)  Plaintiffs believe the Mariachi band did not receive adequate uniforms and equipment or a proper allocation of the district budget because the group is comprised of students who are indigenous and Mexican.  (*Id.*)

According to Plaintiffs, Gonzalez made several requests under the Freedom of Information Act ("FOIA") and analogous state laws related to the Mariachi program at John Jay High School and its budget; these requests are attached to Plaintiffs' proposed Complaint.  (*Id.* at ¶ 4.)  Plaintiffs claim that Gonzalez was treated with hostility and aggression by Principal Sumpter and the other individual Defendants when he made complaints about the budget allocation to the Mariachi band, and Principal Sumpter "destroyed" Gonzalez's initial civil rights complaint.  (*Id.* at ¶ 3.)  According to Plaintiffs, NISD's law firm intentionally delayed responding to Gonzalez's FOIA requests and improperly demanded excessive payment from Gonzalez for the information requested.  Plaintiffs maintain that when NISD finally responded, its response was incomplete and inadequate.  (*Id.*)  Gonzales's first FOIA request sought

information regarding the budget allocated to each school in NISD over the last three years, as well as financial statements demonstrating how the budget was spent.  (Sept. 27, 2019 FOIA Request [#4] at 4.)  The second requested copies of Principal Sumpter's background check and resume.  (Sept. 30, 2019 FOIA Request [#4] at 5.)  And the third requested copies of all complaints against NISD, John Jay High School and other high schools in the district; all correspondence between the individual Defendants in this suit; and receipts and invoices associated with Defendants' law firm.  (Jan. 29, 2020 FOIA Request [#4] at 13.)

In conjunction with its consideration of Plaintiff's motion to proceed IFP, the Court undertook an initial review of the pleadings pursuant to Section 1915(e) and identified several possible issues with Plaintiff's Original Complaint.  First, the Court questioned whether Plaintiff had alleged a viable claim of race or national origin discrimination under Title VI of the Civil Rights Act of 1964, which requires plausible allegations of intentional discrimination based on race or national origin.  Second, the Court questioned whether Plaintiff was intending to sue the individual Defendants named in this action in their official or individual capacities, pursuant to Section 1983 or some other act.  Third, the Court asked for clarification as to whether Plaintiffs are attempting to bring additional causes of action directly under FOIA or the Texas Public Information Act and, if so, highlighted certain issues with such claims.  Fourth, the Court questioned whether Gonzalez is attempting to bring this lawsuit on behalf of his daughter, who is no longer a minor, or on his own behalf.

The Court ordered Plaintiffs to respond to specific questions in their More Definite Statement, the answers to which might assist the Court in better understanding the factual allegations underlying this suit.  These questions were posed as follows:

(1)     Plaintiffs claim that Plaintiff Rivas was treated unfavorably because of her race and national origin.  What specific adverse action do you claim Rivas suffered?

> Why do you believe this adverse action was based on Rivas's race and national
> origin?  Are you able to identify any entity, team, group, or individual that was
> treated more favorably by NISD?  What injuries did Rivas suffer due to NISD's
> allegedly discriminatory actions?
>
> (2)   With respect to the Defendants other than Northside Independent School District,
>       do you intend to plead any causes of action against any of them individually?  If
>       so, how were you harmed by each of these Defendants?  What actions did each
>       Defendant specifically take that contributed to this harm?
>
> (3)   With respect to Plaintiff Gonzalez, how do you allege that Plaintiff Gonzales was
>       specifically harmed by Northside Independent School District?  Are you alleging
>       that Plaintiff Gonzales was a beneficiary or participant with respect to a federally
>       funded program under Title VI?

Plaintiffs' Amended Complaint contains additional factual allegations and attached exhibits but does not specifically respond to these questions.

The Amended Complaint names the same Defendants as identified in Plaintiffs' Original Complaint and clarifies that Plaintiffs are pursuing their claims against the individual Defendants in both their official and individual capacities.  (Am. Compl. [#5] at 1.)  As to the claims Plaintiffs are asserting, the Amended Complaint references discrimination claims under both Title VI and Title IX of the Civil Rights Act of 1964, whereas the Original Complaint only referenced the Civil Rights Act generally.  (*Id.* at 1–2.)  Plaintiffs reassert their allegation that they were discriminated against based on their race, color, and national origin with respect to their Title VI claim but also allege sex discrimination under Title IX.  (*Id.*)  Plaintiffs complain that John Jay High School is a Title I school receiving federal funding and yet allocated zero funds to the Mariachi band in the 2019-2020 school year.  (*Id.* at 2.)  Plaintiffs state that Gonzalez attempted to exercise his rights as a parent under the Texas Education Code by filing the various public records requests referenced above, yet the requests were ignored, responses were delayed, and he was met with hostility by Principal Sumpter.  (*Id.* at 2–3.)

Additionally, Plaintiffs reference Section 1983 and general violations of their constitutional rights and explain that, prior to filing this suit, they filed complaints with the District Attorney's Office of Bexar County, the Texas Attorney General, the U.S. Department of Education, and the U.S. Office for Civil Rights. (*Id.* at 4.) There are additional communications attached to Plaintiffs' Amended Complaint, including email correspondence between Gonzalez and Principal Sumpter regarding the issue of the Mariachi band needing new uniforms and letters from the law firm representing NISD addressing Gonzalez's complaints. (*Id.* at 8–17.) Finally, there is a NISD Police Report included with the Amended Complaint, indicating that on February 10, 2020, an officer was dispatched to NISD's central office in response to a complaint from a parent wanting to make a police report against NISD for its refusal to accept his complaint against Principal Sumpter. (*Id.* at 18.)

Plaintiffs' Amended Complaint seeks civil damages in the amount of $2,000,000, the information Gonzalez sought through his initial FOIA request regarding the budget allocation of the school district, and for Principal Sumpter to be held responsible for the destruction of a public document and to be removed from office. (*Id.* at 6.) Plaintiffs also want to ensure future students who participate in the Mariachi band are guaranteed adequate uniforms and equipment. (*Id.*) Having reviewed all of Plaintiffs' pleadings and attachments, the undersigned still finds certain defects with Plaintiffs' claims such that this case should be dismissed pursuant to Section 1915(e).

**B.    Plaintiffs fail to state a claim of Title VI discrimination.**

Plaintiffs' Amended Complaint alleges race and national origin discrimination in violation of Title VI. (Am. Compl. [#5] at 1–2.) Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national

origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The Supreme Court and the Fifth Circuit have held that an implied private right of action exists under Title VI only for violations involving intentional discrimination. *See Guardians Ass'n v. Civil Serv. Comm'n of New York*, 463 U.S. 582, 601 (1983); *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1357 (5th Cir. 1983); *see also Alexander v. Choate*, 469 U.S. 287, 293 (1985) ("Title VI itself directly reache[s] only instances of intentional discrimination."). Title VI does not protect individuals from unfair decisions, but only decisions that are made with discriminatory motive or intent. *Bisong v. Univ. of Houston*, 493 F. Supp. 2d 896, 905 (S.D. Tex. 2007) (citing *Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997)). Accordingly, the primary issue in Title VI cases is not whether a recipient of federal funding made an erroneous decision, but whether that decision was made with discriminatory motive. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995).

The burden of proof in a Title VI case is the same as that for Title VII and other civil rights statutes. *See Baldwin v. Univ. of Texas Med. Branch*, 945 F. Supp. 1022, 1031 (S.D. Tex. 1996) (pronouncing that the burden-shifting analytical inquiry into intentional race discrimination claims is essentially the same for § 1981, § 1983, Title VI, and Title VII). In the absence of direct evidence of discrimination, the plaintiff may seek to establish a *prima facie* case with circumstantial evidence though a variation of the model set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* To establish a *prima facie* case of Title VI discrimination, a plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse action at the hands of defendants in pursuit of his education; (3) he was qualified to continue in pursuit of his education; (4) and he was treated differently from similarly situated

students who were not members of his protected class.  *See Washington v. Jackson State Univ.*, 532 F. Supp. 2d 804, 810 (S.D. Miss. 2006) (citing *Bell v. Ohio St. Univ.*, 351 F.3d 240, 253 (6th Cir. 2003)).

Plaintiffs' Title VI claim is based on an allegation that NISD, a recipient of federal funding, discriminated against Rivas based on her national origin by failing to allocate funds to the extracurricular Mariachi band program at John Jay High School.  Yet, aside from complaining that some sports teams received a disproportionate allocation of funding resources, Plaintiffs do not assert any specific allegations regarding NISD's treatment of other comparable extracurricular programs.  In its Order for a more definite statement, the Court specifically asked Plaintiffs to identify any entity, team, group, or individual that was treated more favorably than Rivas and the Mariachi band, but Plaintiffs failed to do so.  Plaintiffs' references to the "gladiator-style arenas" being constructed for other programs presumably refers to the allocation of resources for the high school's football program; yet, Plaintiffs do not provide the Court with any allegations from which a factfinder could infer that these funding decisions were due to intentional discrimination on the basis of national origin or race, as opposed to myriad other factors.  To be actionable under Title VI, there must be allegations that Rivas, as an indigenous Mexican, was treated differently than similarly situated high school students "solely on the basis of national origin, color, or race."  *See DeLeon v. City of Dallas*, No. 3:02-CV-1097-K, 2008 WL 2941245, at *3 (N.D. Tex. July 25, 2008).  The Court acknowledges Plaintiffs' frustration at NISD's failure to fully fund the Mariachi program at John Jay High School, but Plaintiffs' allegations, even if accepted as true, do not state a claim for national origin or race discrimination under Title VI.

**C.      Plaintiffs fail to state a claim of Title IX discrimination.**

Plaintiffs' Amended Complaint also references Title IX gender discrimination.  (Am. Compl. [#5] at 2.)  Title IX, in pertinent part, provides: "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Title IX, like Title VI, is enforceable through a private right of action and allows for the recovery of damages.  *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 639 (1999).  There are two avenues for Title IX claims—one for claims based on an official policy of discrimination and one based on an institution's actual notice of and deliberate indifference to sexual harassment or assault.  *Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 879 (W.D. Tex. 2019).  It appears that Plaintiffs are attempting to assert the former.

To be actionable under Title XI, claims based on an official policy of discrimination require "a showing of actual, intentional discrimination on the part of the school district."  *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 657 (5th Cir. 1997).  Neither of Plaintiffs' pleadings contain allegations that NISD or any other Defendant intentionally discriminated against Rivas based on her sex.  In fact, there is no reference whatsoever in the pleadings to Rivas's sex or gender or the gender of the other members of the Mariachi band at John Jay High School.  Even accepting all of the allegations in Plaintiffs' pleadings as true, Plaintiffs fail to state a claim of Title IX sex discrimination.

**D.      Plaintiffs fail to state a cause of action under Section 1983.**

Plaintiffs' Amended Complaint alleges that NISD and the other Defendants were also in violation of 42 U.S.C. § 1983 when they failed to timely and completely respond to Gonzalez's request for information related to NISD's budget decisions and funding allocation.  (Am. Compl.

[#5] at 3–4.)  Section 1983 provides a civil remedy in federal court for violations, under color of state law, of the rights, privileges and immunities secured by the Constitution and laws of the United States.  *Findeisen v. N.E. Indep. Sch. Dist.*, 749 F.2d 234, 236–37 (5th Cir. 1984).  School administrators, such as principals, have been treated as state actors for purposes of section 1983.  *See generally Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521 (5th Cir. 1994).  To state a claim under section 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person or entity acting under color of state law.  *See Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998) (citations omitted).

Plaintiffs' allegations surrounding the failure of Defendants to provide a timely and complete response to various open records requests do not state a cause of action under Section 1983.  First, Plaintiffs' Amended Complaint references both FOIA and the Texas Public Information Act.  (*See* Am. Compl. [#5] at 2.)  FOIA provides jurisdiction over records held by federal agencies and does not extend to other entities or to individuals.  *See Blankenship v. Claus*, 149 Fed. App'x 897, 898 (11th Cir. 2005); *Wright v. Curry*, 122 Fed. App'x 724, 725 (5th Cir. 2004).  As NISD is not a federal agency, FOIA would not apply to the records at issue in this case and therefore could not give rise to a Section 1983 cause of action based on a violation of this federal law.  The Texas Public Information Act is a state law; thus, any violation of its terms would not constitute a violation of rights secured by the Constitution or laws of the United States.

Plaintiffs may be, however, attempting to bring a procedural due process claim related to the allegedly deficient responses to Gonzalez's open records requests.  Such a claim also fails as a matter of law.  The Texas Public Information Act sets forth a comprehensive administrative

10

procedure for redressing complaints regarding failures to comply with the Act.  *See* Tex. Gov't Code § 552.321, *et seq.*  A complainant may file a complaint with the local district or county attorney, and if the result is not favorable, a complaint with the Attorney General of Texas.  *See id.* at § 552.3215(e); *see also Trevino-Garcia v. Univ. of Tex. Health Sci. Ctr. Sch. of Med.*, Civ. A. No. 09-CA-0572-XR, 2009 WL 5195962, at *5 (W.D. Tex. Dec. 21, 2009).  Plaintiffs' pleadings indicate that Gonzalez employed this process, filing a complaint with the District Attorney's Office of Bexar County and the Attorney General regarding his records request but that nothing was done to rectify his complaint.  (Am. Compl. [#5] at 4.)  Accordingly, the question before the Court is whether, assuming that Gonzalez could establish a constitutionally protected property interest in the records requested, the actions of Defendants could give rise to a federal claim for the denial of procedural due process.

"When a state official is involved in a deprivation of property without adequate predeprivation safeguards, he may be liable (in his personal or official capacity) under the Fourteenth Amendment for violating the due process rights of the person deprived of property." *Charbonnet v. Lee*, 951 F.2d 638, 641–42 (5th Cir. 1992).  However, the *Parratt-Hudson* doctrine, as developed by the Supreme Court in *Parratt v. Taylor*, 451 U.S. 527 (1981), and *Hudson v. Palmer*, 468 U.S. 517 (1984), provides that "a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate postdeprivation remedy."  *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir. 1995).  The Fifth Circuit, in a per curiam opinion, held that the *Parratt-Hudson* doctrine barred a procedural due process claim based on a violation of the Louisiana Public Records Act, as the post-deprivation remedy provided by the Act, would be adequate to address a failure to produce public records.  *Williams v. Kreider*, 996 F.2d 306 (5th Cir. 1993).  The

Texas Public Information Act, like the Louisiana Act, provides comprehensive post-deprivation remedies to redress the failure of a governmental body to make information available for public inspection, including the option of seeking a writ of mandamus or filing an action for a declaratory judgment or injunctive relief in the appropriate state court.  Tex. Gov't Code §§ 552.321, 552.3215.  Plaintiffs cannot bring their complaints regarding the deprivation of any property interest in the records requests at issue—against any Defendant in an official or individual capacity—through a procedural due process claim pursuant to Section 1983, as this claim is barred by the *Parratt-Hudson* doctrine.

As Plaintiffs have failed to allege a plausible claim under any federal statute, this case should be dismissed under Section 1915(e).

## II.  Appointment of Counsel

Plaintiffs also have requested the appointment of counsel.  Plaintiffs' motion [#6] indicates that they have contacted several attorneys to represent them in this matter, but their requests have been ignored.

Under § 1915(e)(1), the Court has discretion to appoint an attorney to represent a litigant in federal court, but there is no right to the automatic appointment of counsel in a civil case. *Akasike v. Fitzpatrick*, 26 F.3d 510, 512 (5th Cir. 1994); *Cupit v. Jones*, 835 F.2d 82, 86 (5th Cir. 1987).  Appointment of counsel in a civil case is considered a privilege, not a constitutional right, and should be allowed only in exceptional circumstances.  *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982) (citation omitted); *see Cupit*, 835 F.2d at 86.  In evaluating whether the appointment of counsel is proper under § 1915(e), the district court considers the type and complexity of the case, the litigant's ability to investigate and present the case, and the level of

skill required to present the evidence.  *See Castro Romero v. Becken*, 256 F.3d 349, 354 (5th Cir. 2001).

The Court declines to appoint counsel in this matter.  Plaintiffs have not demonstrated that exceptional circumstances are present in this case or that, based on the record, appointment of counsel is appropriate due to the nature of the claims asserted and Plaintiffs' ability to present their claims in this Court.  Plaintiffs' motion indicates that Gonzalez is a high school graduate and has completed some college education.  Plaintiffs' pleadings are well written and communicate the allegations underlying this lawsuit adequately to the Court.  Despite the clarity of Plaintiffs' communication, there are legal defects that prevent Plaintiffs' claims from moving forward in this Court.  Accordingly, the appointment of counsel is not warranted.

### III.  Conclusion and Recommendation

Having considered Plaintiffs' pleadings and the governing law, the undersigned **recommends** that Plaintiffs' claims be **DISMISSED** under 28 U.S.C. § 1915(e).

**IT IS ALSO ORDERED** that Plaintiffs' Motion for the Appointment of Counsel [#6] is **DENIED**.

### IV.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing

objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 22nd day of September, 2020.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE